WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary Jan Moore, | No. CV-12-00770-PHX-BSB |
| Plaintiff, | **ORDER** |
| v. | |
| Marriott International Incorporated, et al., | |
| Defendants. | |

Plaintiff Mary Jan Moore (Plaintiff or Moore) is a massage therapist at the Marriott's Revive Spa (the Spa).   Plaintiff alleges that, her employer, Defendants Marriott International, Inc. and J.W. Marriott Desert Ridge (Defendants or Marriott), discriminated against her based on disability, and refused to provide reasonable accommodations, in violation of the Americans with Disabilities Act of 1990 (ADA) (Count 1).  (Doc. 1 at 4-5.)  She also alleges a state law claim of intentional infliction of emotional distress (Count 2).  (*Id.* at 5.)  This matter is before the Court on the parties' motions for summary judgment.[1]

Plaintiff moves for partial summary judgment on her ADA discrimination claims. (Doc. 94.)  Plaintiff argues that the Court should find that, as a matter of law, at all

---

[1]   The parties consented to magistrate judge jurisdiction under 28 U.S.C. § 636. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over Plaintiff's state law claim.  *See Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004).

relevant times she was a qualified person with a disability, and that Defendants discriminated against her by (1) disciplining her because of her disability, (2) denying her equal opportunity for booking spa appointments, and (3) failing to assign her certain points in the spa appointment booking system.   (Doc. 94.)   Defendants move for summary judgment on all of Plaintiff's ADA claims and argue that, as a matter of law, Plaintiff is not disabled, that she received reasonable accommodations, and that the additional accommodations she requested were not reasonable.   (Docs. 92.)   Defendants also seek summary judgment on Plaintiff's claims for intentional infliction of emotional distress and punitive damages.   (*Id.*)

For the reasons below, the Court denies Plaintiff's motion for partial summary judgment, and grants Defendants summary judgment on Plaintiff's claim that Defendants discriminated against her by disciplining her for her disability.   The Court also grants Defendants' motion for summary judgment on Plaintiff's claim of intentional infliction of emotional distress.   The Court denies Defendants' request for summary judgment on Plaintiff's reasonable accommodation claims.   The Court also denies Defendants' motion for summary judgment on Plaintiff's claim for punitive damages.

## I.     Factual Background

### A.     Evidence of Plaintiff's Seizures

In 1995, before Plaintiff began working for Marriott, she started having seizures. (PSOF ¶ 4, corrected Ex. 2 at 15-25; DSOF ¶ 41, Ex. 6 at 9, 19.)[2]   Plaintiff testified that she was diagnosed with epilepsy in 1995.   (PSOF ¶ 31, corrected Ex. 2 at 16-17, Ex. 1 at 5.)   In 2002, Plaintiff began working for Marriott.   (PSOF ¶ 38; DSOF ¶ 29.)[3]   In June 2006, Plaintiff had two grand mal seizures while participating in work-related training

---

[2]   Citations to "PSOF, Ex." are to exhibits attached to Plaintiff's originally filed Statement of Facts in Support of Her Motion for Summary Judgment.   (Doc. 95.) Citations to "PSOF, corrected Ex." are to corrected exhibits attached to Plaintiff's corrected Statement of Facts in Support of her Motion for Summary Judgment. (Doc. 118.)

[3]   Citations to PSOF are to Plaintiff's Statement of Facts in Support of Her Motion for Summary Judgment, as corrected on July 15, 2014.   (Doc. 118, Ex. 1.)

using a line of scented products.  (PSOF ¶¶ 7, 11, Ex. 1.)  Later that year, Plaintiff told her supervisor, Candy James, that she believed the scented oils she used during the training caused her seizures.  (PSOF ¶ 124, Ex. 2 at 114-115.)

In February 2007, Plaintiff had another grand mal seizure and went to the emergency room at Scottsdale Healthcare Osborn Hospital.  (PSOF, corrected Ex. 2 at 101, 102.)  The treating doctor noted that Plaintiff "may well have focal epilepsy." (PSOF, corrected Ex. 2 at 311.)  He opined that Plaintiff should take anti-seizure medication for the rest of her life, and Plaintiff continues to takes such medication.  (*Id.* at 313-14; PSOF ¶ 32, corrected Ex. 2 at 47, 118.)  Two of Plaintiff's medical providers have opined that scented oils could cause a seizure.  (PSOF ¶ 11, corrected Ex. 2 at 56, 98, Ex. 4 at 43.)

**B.      2006 Request for Accommodation**

On November 10, 2006, Plaintiff gave her supervisor, Candy James, a note from Dr. Andrea Orlowski requesting that Plaintiff be excused "from working with any essential oils as they contribute[d] to health problems in her."  (PSOF ¶ 124-25, corrected Ex. 2 at 114-115.)  James honored Plaintiff's request to be removed from treatments that required the use of essential or scented oils.  (PSOF ¶ 125, corrected Ex. 2 at 114, 117; DSOF ¶¶ 49, 52-53, Ex. H at 114-118, 112; 166, Ex. F at 336-37.)  Plaintiff and her supervisor did not discuss the Revive Massage at that time.  (DSOF ¶ 51, Ex. H at 146-47, 156-57, 166, 170-71.)

Defendants assert that in 2006, according to Plaintiff's deposition testimony, the only treatments that required the use of scented oils were the body treatments.  (DSOF ¶ 50; Ex. H 146, 233-34.)  Although Plaintiff testified that body treatments required the use of scented oils in 2006, she did not testify that only the body treatments required scented oils.  (DSOF, Ex. H  at 146.)  Instead, Plaintiff testified that, before 2007, the body treatments, the Desert Ridge Massage, and an aromatherapy massage all required

1  the use of scented oils.  (PSOF 2 ¶ 128, Ex. 1; DSOF, Ex. H t 146.)[4]   The Revive

2  Massage was performed with unscented oils until 2007.  (PSOF 2 ¶ 125, Ex. 1.)

3      **C.    Implementation of a New Booking System in 2010**

4      In October 2010, Marriott implemented the Service Booking Enhancement System

5  (the Enhanced System) for scheduling appointments and assigning guests to therapists on

6  a rotation system.  (DSOF ¶¶ 54-55; PSOF ¶ 56.)  The Enhanced System assigns points to

7  therapists based on several criteria, including years of service with Marriott, status as a

8  full or part-time employee, flexibility in working certain schedules, and the ability to

9  perform the body treatments and massage modalities offered by the Spa.  (DSOF ¶ 57.)

10 The therapists' points and the percentage of appointments they receive for their hours

11 worked determine their rank in getting appointments assigned to them by the Spa's

12 computer program, Spa Soft.  (DSOF, ¶ 58.)  Generally, a therapist with higher points

13 and a lower percentage of appointments would receive an appointment before a therapist

14 with fewer points and a higher percentage of appointments.  (*Id.*)

15     Additionally, as part of its system for assigning appointments, Marriott adopted a

16 Spa Balancing Policy, which provides, in part, "if a guest moves an appointment to a later

17 time at the last moment, the supervisor will make every effort to swap an appointment if

18 possible."  (PSOF ¶ 77, Ex. 22, section H; corrected Ex. 9 at 29, 35.)

19     After a meeting regarding the Enhanced System, Plaintiff expressed concern to

20 Anna Smith, Marriott's Director of Human Resources, regarding how the system would

21 affect a therapist who could not perform certain treatments.  (DSOF ¶59-60.)  Plaintiff

22 informed Smith that she had a "neurological seizure disorder" and that working with

23 scented oils and lotions could cause her to have a seizure.  (DSOF ¶ 60, Ex. H at 164-65,

24 170.)   Plaintiff told Smith that she could not perform the body treatments and

25

26

27     [4]  Citations to "PSOF 2" are to Plaintiff's Statement of Facts in Support of

28 Response to Defendant's Motion for Summary Judgment.  (Doc. 104.)  Citations to
exhibits to PSOF 2 are to exhibits attached to PSOF 2.  Plaintiff explains that "PSOF 2"
supports her Controverting Statement of Facts.  (Doc. 105.)

aromatherapy.  (DSOF ¶63, Ex. H at 171.)  Smith and Plaintiff did not discuss the Revive Massage.  (DSOF, Ex. H. at 170-71.)

Several weeks later, Plaintiff gave Smith a note from Bunnie Richie, D.O., dated October 5, 2010, stating that Plaintiff was "contraindicated from working with scented oils, lotions, and aromas due to her condition."  (DSOF ¶ 65; PSOF, Ex. 5.)  Dr. Richie testified that by "her condition," she was referring to Plaintiff's "temporal lobe epilepsy" and she believed that scented oils could "trigger" or "exacerbate" Plaintiff's condition. (PSOF, Ex. 4 at 43.)

Plaintiff later met with Smith and the Spa Director, Becky Barrett, and Smith told Plaintiff that Marriott would excuse her from performing the body treatments, but it would not grant Plaintiff's request to continuously rebalance her appointments throughout each shift each time a same-day or last-minute appointment was made, moved, or cancelled.  (DSOF ¶ 64, 66, Ex. H at 173, 180-81; PSOF 62.)  Barrett explained that under the Enhanced System, the Spa supervisors would continue to balance the appointments among the therapists but would only do so twice a day, once in the morning and once in the afternoon, thirty to sixty minutes before each shift.  (DSOF, Ex. H at 177-78; PSOF ¶ 65.)

Barrett stated that, rather than continuously rebalancing the appointments throughout a shift, if Plaintiff was next in rotation to receive the next same-day booking for a body treatment that she could not perform, the Spa would, nevertheless, pay Plaintiff her hourly rate, commission, and tip on the body treatment, even though she would not perform the treatment.  (DSOF ¶ 67; Ex. H at 173-76.)  Plaintiff agreed to try that procedure.  (DSOF ¶ 68-70; Ex. H at 175.)  Barrett also told Plaintiff that Marriott would assign her the full eighteen points in the Enhanced System for all eight of the body treatments, even though Plaintiff could not perform them.  (DSOF ¶ 71, Ex. H at 173, 187, 264; PSOF ¶ 142.)

///

///

### D.    The 2011 Discipline

On June 29, 2011, Spa supervisor Danielle Morgan questioned Plaintiff about a Spa guest's complaint that Plaintiff had used unscented oil during a Revive Massage instead of the Spa's signature scented Revive herb garden oil, which is required by the Spa's protocols for the Revive Massage.  (DSOF ¶ 72, Ex. H at 191.)  On July 1, 2011, Plaintiff had a meeting with Morgan regarding the incident.  (DSOF, Ex. H at 191.)  Plaintiff testified that before the July 1, 2011 meeting, she had discussed her seizure disorder with Morgan.  (DSOF, Ex. H at 191.)  During the July 1, 2011 meeting with Morgan, Plaintiff stated that Morgan, Barrett, and Smith should have known that she provided doctors' notes excusing her from using scented oils and lotions and that she had been removed from "all body treatments and massages that were performed with these scented oils" in 2007 and again in 2010.  (DSOF, Ex. H. at 192.)  Morgan said she was not aware of that information.  (*Id.*)  Morgan gave Plaintiff a written warning for not following Spa protocol.  (DSOF ¶ 73, Ex. H at 193; PSOF ¶ 174, 178.)  Plaintiff refused to sign the written warning because she did not think she had done anything wrong. (DSOF, Ex. H at 193.)

Plaintiff then met with Morgan and Barrett.  (DSOF, Ex. H at 193.)  Plaintiff stated that she thought there was a misunderstanding because she had never been "taken off" the Revive Massage.  She thought management knew she could not use scented oils and lotions and therefore she assumed that Spa management was "okay" with her performing the Revive Massage with unscented oils.  (DSOF, Ex. H at 194-95, 230, 249-50; PSOF corrected Ex. 2 at 341.)  Plaintiff disputed the written warning on the ground that she had provided Smith with a doctor's note on October 5, 2010 indicating that she could not use scented oils or lotions.  (DSOF ¶ 74, H at 193-95, 249-50.)  Plaintiff acknowledged that she did not discuss the Revive Massage with Barrett or anyone else in 2010.  (DSOF, Ex. H at 170-71, 195, 250.)  Barrett reduced the discipline to a verbal warning.  (DSOF ¶ 75, Ex. H at 198-99; PSOF, Ex. 23.)

/ / /

### E.     2011 Request for Accommodation

Plaintiff spoke to Smith and Barrett and re-urged her request that the Spa rebalance the appointment schedule continuously throughout the day.  She also requested that she receive three points in the Enhanced System for the Revive Massage, and that the Spa add an unscented Swedish massage to its menu of services.  (PSOF ¶¶ 164, 171, corrected Ex. 2 at 238-42, 341, 344, 345.)  Smith and Barrett told Plaintiff that the Spa would not assign her three points in the Enhanced System for the Revive Massage, add an unscented massage to the Spa menu, or continuously rebalance her appointments.  (PSOF ¶¶ 44, 171, corrected Ex. 2 at 240, 342-43, 345.)  However, it would permit Plaintiff to perform the Revive Massage with unscented oils when a guest requested it or when a guest agreed to the massage without scented oil if Plaintiff was the only therapist available at the particular time the guest requested.  (DSOF ¶ 78; Ex. H at 208-11.)

Plaintiff testified that when she asked Marriott to accommodate her by assigning her three points for the Revive massage in the Enhanced System, Barrett told her that the Spa had done "enough" to accommodate her (PSOF ¶ 153), she had "exhausted her ADA," and was a "burden of the Spa." (PSOF ¶ 184, Ex. 1 at ¶ 28, corrected Ex. 2 at 340-43; Ex. 29.)  Plaintiff asserts that as a result, her number of bookings has declined and she has lost income.  (PSOF ¶ 41, 149-50.)

## II.     Summary Judgment Standard

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed

evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

The Ninth Circuit "has set a high standard for the granting of summary judgment in employment discrimination cases." *Schnidrig v. Columbia Mach. Inc*., 80 F.3d 1406, 1410 (9th Cir. 1996). "[V]ery little evidence is required to survive summary judgment in a discrimination case because the ultimate question is one that can only be resolved through a searching inquiry — one that is most appropriately conducted by the factfinder, upon a full record." *Id.*

### III.   Plaintiff's ADA Discrimination Claims

The ADA provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, governs the analysis of claims under the ADA. *See Budnick v. Town of Carefree*, 518 F.3d 1109, 1113-14 (9th Cir. 2008).

To establish a prima facie case under the ADA, the plaintiff must prove three elements: (1) that she is disabled within the meaning of the statute; (2) she is a qualified individual able to perform the essential functions of the job, either with or without reasonable accommodations; and (3) she suffered an adverse employment action because of her disability. *Nunes v. Wal-Mart Stores, Inc*., 164 F.3d 1243, 1246 (9th Cir. 1999) (citation omitted); *see also Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (citing 42 U.S.C. § 12112(a), (b)(5)(A) (requiring reasonable accommodation)).

### A.   "Disability" under the ADA

The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in

1    [42 U.S.C. § 12102](3)).”  42 U.S.C. § 12102(1).  Because the alleged discrimination

2    occurred after the effective date of the ADA Amendments Act of 2008 (ADAAA), that

3    statute applies to this case.  The ADAAA expanded the scope of the term “disability” in

4    the ADA.  *See Rohr v. Salt River Project Agric. Improvement & Power Dist.*, 555 F.3d

5    850, 861 (9th Cir. 2009).

<h3 align="center">1.    Physical Impairment</h3>

7    Plaintiff alleges that she has epilepsy and that epilepsy is an impairment under the

8    ADA.  (Doc. 94 at 7-8.)  A “physical impairment” is “any physiological disorder or

9    condition, cosmetic disfigurement, or anatomical loss affecting one or more of the

10   following body systems: neurological; musculoskeletal; special sense organs; respiratory,

11   including speech organs; cardiovascular; reproductive, digestive, genitourinary; hemic

12   and lymphatic, skin; and endocrine.”  29 C.F.R. § 1630.2(h)(1).

13   Plaintiff presented her deposition testimony and some medical evidence that she

14   has suffered from seizures since 1995, has been diagnosed with epilepsy, and that she

15   takes anti-seizure medication regularly.  (PSOF ¶ 4, corrected Ex. 2 at 15-25; PSOF ¶ 31,

16   corrected Ex. 2 at 16-17, Ex. 1 at 5; PSOF ¶ 32, corrected Ex. 2 at 47, 118.)  She also

17   presented deposition testimony from her treating physician, Dr. Richie, stating that

18   Plaintiff's epilepsy could be exacerbated by scented oils.  (PSOF, Ex. 4 at 43.)

19   Defendants do not dispute that Plaintiff suffers from seizures.  (Doc. 92 at 8-9.)  Rather

20   they argue that, other than her own beliefs, Plaintiff has not provided evidence that

21   exposure to scented oils causes Plaintiff's seizures.  (Doc. 92 at 8.)  However, to satisfy

22   the first element of the prima facie case, it is not necessary for Plaintiff to show that her

23   alleged impairment is caused or exacerbated by aspects of her employment.  *See* 29

24   C.F.R. § 1630.2(g) and (h)(1) (defining physical or mental impairment without reference

25   to an individual's employment).  Considering Plaintiff's detailed deposition testimony

26   regarding her history of seizures and diagnosis of epilepsy, the Court finds that Plaintiff

27   has presented sufficient evidence to establish that her seizures are a physical impairment.

28   *See Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 216 (2d Cir. 2001) (it is

"well established" that "epilepsy constitutes a disability under the ADA"); *Franklin v. Consol. Edison Co. of N.Y., Inc.*, 1999 WL 796170, at *11 (S.D.N.Y. Sept. 30, 1999) (idiopathic seizure disorder, or epilepsy, is a physical impairment that affects the neurological and musculoskeletal systems).

### 2.      Substantial Limitation of a Major Life Activity

An impairment alone is insufficient to render an individual disabled under the ADA; a plaintiff must also show that her impairment substantially limits a major life activity. *See Rohr*, 555 F.3d at 858. The regulations in 20 C.F.R. § 1630.2(i) provide a non-exhaustive list of major life activities, which include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Substantially limited means that an impairment "limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

The term "substantially limits" is "construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i); *see also* 42 U.S.C. § 12102(4)(A-C). An impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. §1630.2(j)(1)(ii). Although courts are to make "an individualized assessment," 29 C.F.R. § 1630.2(j)(1)(iv), the focus of the court's attention should be primarily on "whether [employers] have complied with their obligations and whether discrimination has occurred, not [on] whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(1)(iii).

At the summary judgment stage, the Ninth Circuit does not require comparative or medical evidence to establish a genuine issue of material fact regarding the substantial limitation of a major life activity. *See Head v. Glacier N.W. Inc.*, 413 F.3d 1053, 1058 (9th Cir. 2005). "[A] plaintiff's testimony may suffice to establish a genuine issue of

material fact." *Id.*  Such testimony, however, must meet the generally required degree of personal knowledge and factual detail needed to withstand summary judgment.  *See Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012.)  "To survive summary judgment, an affidavit supporting the existence of a disability must not be merely self-serving and must contain sufficient detail to convey the existence of an impairment." *Head,* 413 F.3d at 1059.

Defendants argue that even if Plaintiff's seizures are considered an impairment under the ADA, Plaintiff has not shown that her seizures substantially limit a major life activity because she has not shown that her seizures limit her ability to work.  (Doc. 92 at 9 n.3.)  Defendants' argument fails because it does not recognize that major life activities include more than work.  *See* 29 C.F.R. § 1630.2(i).  Plaintiff offers evidence that when she has a seizure she is unable to engage in several activities that are considered major life activities, including performing manual tasks, seeing, hearing, speaking, eating, walking, standing, lifting, bending, learning, reading, concentrating, thinking, communicating, and working.  (PSOF ¶ 28-30; Ex. 3 at ¶ 3.)  Defendants do not dispute Plaintiff's assertion that she is unable to participate in these activities during a seizure. (Doc. 92 at 9 n.3 )

Plaintiff takes seizure medication and has not had a seizure since 2007.  (PSOF ¶ 8, corrected Ex. 2 at 105.)  Under the ADAAA, the fact that the periods during which an episodic impairment is active and substantially limits a major life activity may be brief or infrequent is not relevant to determining whether the impairment substantially limits a major life activity.  29 C.F.R. § 1630.2(j)(1)(vii) ("An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.").

The record includes evidence that Plaintiff has a history of seizures and that she is substantially limited in several major life activities during a seizure.   Viewing the evidence in the light most favorable to Plaintiff, and construing that evidence in favor of expansive coverage as required by the ADAAA, Plaintiff has raised a genuine dispute regarding whether her seizures substantially limited several major life activities.  "At the

1    summary judgment stage, the 'requisite degree of proof necessary to establish a prima

2    facie case . . . is minimal and does not even need to rise to the level of a preponderance of

3    the evidence.'" *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting *Wallis v.*

4    *J.R. Simplot Co*., 26 F.3d 885, 889 (9th Cir. 1994)).

5         Therefore, the Court denies Defendants' motion for summary judgment on the

6    issue of disability.  Plaintiff, however, has not established, *beyond* a dispute of material

7    fact, that she is disabled under the ADAAA.  *See McGregor v. Nat'l. R.R. Passenger*

8    *Corp*., 187 F.3d 1113, 1115 (9th Cir. 1999) (plaintiff must establish all prima facie

9    elements of an ADA claim beyond dispute of material fact to prevail on summary

10   judgment).  Additionally, the issue of whether an individual is substantially limited in a

11   major life activity is generally a question for the finder of fact.  *See Bristol v. Bd. of*

12   *County Comm'rs of Clear Creek*, 281 F.3d 1148 (10th Cir. 2002).  Accordingly, the

13   Court also denies Plaintiff's motion for partial summary judgment on the issue of

14   disability.

15       **B.      Qualified to Perform the Essential Functions of the Job**

16       For the purpose of establishing the second prong of the prima facie case, the ADA

17   defines "qualified individual" as one who "with or without reasonable accommodation,

18   can perform the essential functions of the employment position that such individual holds

19   or desires." 42 U.S.C. § 12111(8).  The parties do not dispute that Plaintiff is qualified to

20   perform the essential functions of her job.  (Doc. 92 at 8) (arguing that that Plaintiff

21   cannot meet her burden of proof on the *first* and *third* prongs of her ADA claim);

22   (Doc. 109 at 2) (for purposes of its response to Plaintiff's motion for partial summary

23   judgment, Defendants do not dispute that Plaintiff met her burden of proof on the first

24   two elements of her prima facie case).  Accordingly, the Court does not further address

25   this element of Plaintiff's prima facie case and finds that Plaintiff has established that she

26   is a qualified individual able to perform the essential functions of her job.

27   ///

28   ///

## C.    Adverse Employment Action and Causation

In addition to establishing the first two elements of the prima facie case, to state a claim for discrimination under the ADA Plaintiff must also establish that she suffered an adverse employment action because of her disability. *Sanders v. Arneson Prods., Inc*. 91 F.3d 1351, 1353 (9th Cir. 1996). Plaintiff alleges three adverse employment actions. First, she asserts that Defendants disciplined her in 2011 with a written and verbal warning. Second, she asserts that Defendants refused to assign her three points for the Revive Massage in the Enhanced System. Third, she asserts that Defendants refused to rebalance her appointments throughout her shift. (Doc. 94 at 1, 12.)

### 1.    The 2011 Discipline

In her motion for summary judgment, Plaintiff argues that Defendants discriminated against her by disciplining for her using unscented oil during a Revive Massage and she asserts that the verbal warning she received, which was memorialized in writing, was an adverse employment action. (Doc. 94 at 6, 12.) Defendants argue that the warning was not an adverse employment action and, therefore, this claim of discrimination fails as a matter of law. (Doc. 109 at 3, 7.)

On July 1, 2011, Marriott issued Plaintiff a Disciplinary Action Form including a written warning disciplining Plaintiff for failing to follow Spa protocol by using unscented oil for a Revive Massage.[5] (PSOF ¶¶ 177-181, Ex. 18.) In a section labeled "Description of Corrective Action," the written warning stated that Plaintiff would "follow protocols for all services as written, if her medical condition prohibits, she must notify management to determine what if any further accommodation can be made to her position as a massage therapist." (PSOF, Ex. 18.) The written warning also stated that "additional infraction(s)/violations(s) of company policy or procedure may result in

---

[5]    The Disciplinary Action Form states that "On 6-29-2011, it was brought to management's attention that Jan has not followed the written protocol for the Revive Massage. . . . Jan has been substituting another product [for the signature blend massage oil] without notifying the guest or management. Management is aware that Jan has been granted an ADA accommodation to not use scented products for certain services, however, Jan to date had not disclosed that she could not do the Revive Massage as described in the menu." (Doc. 95, Ex. 18.)

1    further disciplinary action up to and including termination."  (PSOF, Ex. 18.)   After

2    discussing the incident with Plaintiff, on July 2, 2011, Marriott issued another

3    Disciplinary Action Form changing the discipline type from a written warning to a verbal

4    warning.  (PSOF ¶ 209, Ex. 23.)  Otherwise, the contents of the July 2, 2011 Disciplinary

5    Action Form are the same as the July 1, 2011 Disciplinary Action Form.  (*Compare*

6    PSOF, Ex. 18, *with* PSOF, Ex. 23.)   Because the verbal warning was memorialized in

7    writing and includes the same contents as the written warning that it replaced, the Court

8    considers the verbal warning to be the same as the written warning.[6]

9           For the purposes of a discrimination claim, an adverse employment action is one

10   which "materially affects the compensation, terms, conditions, or privileges of

11   employment."  *Davis v. Team Elec. Co*., 520 F.3d 1080, 1089 (9th Cir. 2008) (internal

12   citations and modification omitted) (discussing adverse employment action in the context

13   of the plaintiff's claim of "disparate treatment discrimination" under Title VII); *see also*

14   *Kang v. U. Lim Am., Inc*., 296 F.3d 810, 818, 819 (9th Cir. 2002) (plaintiff established a

15   prima facie case of disparate treatment when the defendant subjected the plaintiff to

16   adverse employment actions including verbal and physical abuse, discriminatory

17   overtime, and termination, "that constituted a material change in the terms and conditions

18   of [the plaintiff's] employment") (internal quotation omitted); *Chuang v. Univ. of Cal.*

19   *Davis, Bd. of Trs.*, 225 F.3d 1115, 1126 (9th Cir. 2000) (finding that "[t]he removal of or

20   substantial interference with work facilities important to the performance of the job

21   constituted a material change in the terms and conditions of a person's employment" and

22   qualified as an adverse employment action, and also finding that the employer's failure to

23   respond to grievances was not an adverse employment action because "it did not

24   materially affect the compensation, terms, conditions, or privileges of the [plaintiffs']

25   employment").

26

27   _____

28          [6]  The Court refers to the initial written warning and the revised verbal warning
     collectively as the warning.

To support her assertion that the warning constituted an adverse employment action, Plaintiff cites *Ray v. Henderson*, 217 F.3d 1234 (9th Cir. 2000), *Fonseca v. Sysco Food Serv. of Ariz.*, 374 F.3d 840, 848 (9th Cir. 2004), and *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 2004).  (Doc. 117 at 5.)  As discussed below, these cases do not support Plaintiff's position.

In *Ray*, a case involving a retaliation claim under Title VII,[7] the Ninth Circuit stated that it adopted an expansive definition of adverse employment action and held that "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity."  *Ray*, 217 F.3d at 1243 (adopting the EEOC's interpretation of adverse employment action).  Plaintiff cites *Ray* for the proposition that the Ninth Circuit broadly defines adverse employment action.  (Doc. 117 at 5.)  However, as Plaintiff herself notes, the definition of adverse employment action adopted in *Ray* does not apply in this case in which "there is no retaliation claim." (Doc. 117 at 5.)  Plaintiff alleges discrimination based on direct or circumstantial evidence (disparate treatment) under the ADA and does not allege retaliation.  (Doc. 1.) Thus, *Ray* does not control the determination of whether the warning was an adverse employment action in this case.

For similar reasons, *Fonseca* and *Yartzoff* do not help resolve the adverse employment action issue.  In *Fonseca*, the employee was initially suspended for a work-related incident.  *Id.*  After the employee grieved his suspension, it was reduced to a warning letter placed in his file.  *Id.*  The Ninth Circuit held that the "warning letter still constitutes an adverse employment action, particularly since Sysco publicizes all discipline to all its employees."  *Id.* (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (In discussing plaintiff's retaliation claims, the court stated that "[t]ransfers of job duties and undeserved performance ratings, if proven, would constitute 'adverse employment decisions[.]'")).

---

[7] *Ray*, 217 F.3d at 1240 (discussing prima facie case of retaliation under Title VII).

1    *Fonseca* and *Yartzoff* are distinguishable from this case.  First, unlike *Fonseca*,

2    there is no evidence that Plaintiff's warning was publicized to other employees.  Second,

3    although *Fonseca* was not a retaliation case, it relied on *Yartzoff,* a Title VII retaliation

4    case, for the proposition that a warning letter can be considered an adverse employment

5    action.  *See Yartzoff*, 809 F.2d at 1375-1376 (discussing prima facie case of Title VII

6    retaliation claim).   "The concept of 'adverse employment action' is more broadly

7    construed in the retaliation context than in the substantive discrimination context in a

8    disparate treatment claim."  *Grimmett v. Knife River Corp*., 2011 WL 841149, at *9

9    (D. Or. Mar. 8, 2011) (citing *Burlington N. & Santa Fe Rwy Co. v. White*, 548 U.S. 53,

10   60-63 and 68 (2006) (explaining that the anti-retaliation provision of Title VII, unlike the

11   substantive provision, is not limited to discriminatory actions that affect the terms and

12   conditions of employment, and defining adverse employment action for purposes of

13   retaliation claims as an action that "a reasonable employee would have

14   found . . . materially adverse," which means that the action that "might have dissuaded a

15   reasonable worker from making or supporting a charge of discrimination") (internal

16   quotation omitted)).[8]  Thus, as the court stated in *Grimmett*, "*Fonseca*, the non-retaliation

17   case, inappropriately cited to *Yartzoff*, the retaliation case, for the proposition that a

18   warning letter with no material impact on the employee's working conditions, constitutes

19   an adverse employment action in a disparate treatment claim."  *Grimmett*, 2011 WL

20   841149, at *9.  For these reasons, *Ray*, *Fonseca*, and *Yartzoff* do not support Plaintiff's

21   claim that the warning was an adverse employment action.

22       To establish an adverse employment action in this non-retaliation case, Plaintiff

23   must establish that the challenged action "materially affects the compensation, terms,

24   conditions, or privileges of employment."  *Davis*, 520 F.3d at 1089.  Plaintiff argues that

25   the warning was an adverse employment action because it stated that "additional

26

27       [8]  Although *Burlington* involved Title VII, the Ninth Circuit has recognized that
     the framework used to analyze Title VII claims applies to the ADA.  *Barnett v. U.S. Air,*
28   *Inc*., 228 F.3d 1105, 1121 (9th Cir. 2000) (adopting Title VII analysis for the ADA),
     *overruled on other grounds*, 535 U.S. 391 (2002).

infraction(s)/violation(s) of company policy or procedures may result in further disciplinary action up to and including termination," and it remains in her file.  (Doc. 117 at 5.)  Without any explanation or citation to the record, Plaintiff describes the warning as her "first bite of the discipline apple."  (*Id.*)

Defendants argue that the warning was not an adverse employment action because Plaintiff continues to work for Marriott "in the same capacity as before the verbal warning," and "every aspect of Plaintiff's employment remains entirely intact." (Doc. 109 at 9.)   To support their position, Defendants cite the declaration of Spa Director Barrett, which states that the "July 2011 verbal warning to [Plaintiff] did not have any effect on her compensation, benefits, or any other terms and conditions of her employment with Marriott."  (Doc. 109, Ex. A.)  Plaintiff does not dispute Barrett's declaration or cite any evidence indicating that the warning materially affected her compensation, terms, or any other condition of her employment.  (Doc. 94 at 12-14, Doc. 117 at 5.)

Several courts within the Ninth Circuit have held that a warning letter is not an adverse employment action.  *See Hoang v. Wells Fargo Bank, N.A.*, 724 F. Supp. 2d 1094, 1104 (D. Or. 2010) (a warning letter which affected no materially adverse change in the terms and conditions of the plaintiff's employment was not an adverse employment action); *Tudor Delcey v. A–Dec, Inc.*, 2008 WL 123855, at *4 and *9 (D. Or. Jan. 9, 2008) (a written warning was not an adverse employment action because it had no impact on the employee's status); *Silva v. Chertoff*, 2007 WL 1795786, at *7 (D. Ariz. Jun. 20, 2007) (a letter of reprimand without any employment consequences was not an adverse employment action).[9]

In *Hoang*, the plaintiff was issued a "First Written Warning" letter providing notice that: "This is the 1st written warning.  If the behavior continues then a Final Written Warning will be issued.  Should you receive a Final Written Warning, you will

_____

[9]  Although the court in *Silva* also noted that the letter of reprimand did not remain in the employee's file, its decision did not turn on that fact.  *Chertoff*, 2007 WL 1795786, at *7.

not be eligible to receive any salary increase or incentive bonuses for the time you remain on Final Written Warning." *Hoang*, 724 F. Supp. 2d. at 1098-99.  The court found that the warning was not an adverse employment action because it stated that the plaintiff would become ineligible for a raise only if her behavior continued and she received a further warning.  *Id.* at *1104.  Thus, because the letter did not "implement any materially adverse change in the terms or conditions of [the plaintiff's] employment, it was not itself adverse employment action." *Id.*

Similar to the warning letter in *Hoang*, the warning Plaintiff received notified her that "additional infraction(s)/violation(s) of company policy may result in further disciplinary action up to and including termination."  (PSOF, Ex. 23.)  The warning notified Plaintiff that she "may" be subject to further discipline only if she committed "additional" violations of company procedure or policy.  (*Id.*)  Thus, the warning itself did not implement any material adverse change in the terms or conditions of Plaintiff's employment and was not an adverse employment action.  *See Tudor Delcey*, 2008 WL 123855, at *4 and *9 (a written warning notifying the employee that if he failed to comply with standard practices, the employer "would issue a probation notice," was not an adverse employment action because it had no impact on the employee's status).  Because the warning was not an adverse employment action, Plaintiff cannot establish a prime facie case of discrimination based on the warning and Defendants are entitled to summary judgment on Plaintiff's claim that Defendants discriminated against her by the 2011 discipline.[10]

///

///

---

[10]  Plaintiff contends that Defendants did not move for summary judgment on her "discrimination claims."  (Doc. 103 at 2.)  Defendants, however, moved for summary judgment on *all* of Plaintiff's claims.  (Doc. 92 at 1.)  Although Defendants' motion for summary judgment did not specifically address whether the warning was an adverse employment action (Doc. 92), the parties fully briefed the issue on Plaintiff's motion for summary judgment.  (Doc. 94 at 12, Doc. 109 at 7-8, Doc. 117 at 4-5.)  Thus, Plaintiff had notice and an opportunity to respond to Defendants' request for summary judgment on this claim.

1

**2.      Rebalancing and Swapping Appointments**

2          Plaintiff also moves for summary judgment on her disparate treatment claim that

3    Defendants violated the ADA by administering their Spa Balancing Policy in a manner

4    that had the effect of discriminating on the basis of disability and that gave male

5    therapists preferential treatment.   (Doc. 94 at 16 (citing 42 U.S.C. § 12112(b)(3)(A).)[11]

6    Plaintiff concedes that the Spa Balancing Policy is facially neutral, but alleges that

7    Defendants "appl[y] the policy to male therapists only."  (Doc. 94 at 16.)  She asserts that

8    Defendants give preferential treatment to male therapists by "rebalancing/swapping [their

9    appointments] manually after the pre-shift balancing in order to try to balance the male

10   therapists who lose bookings because a guest changes the appointment time."  (Doc. 94 at

11   16 (citing PSOF ¶ 195-198).)   Plaintiff's claim appears to be based on Defendants'

12   practice of "swapping" appointments between male and female therapists when a guest

13   who was booked for an appointment with a male therapist expresses a preference for a

14   female therapist on short notice.  (Doc. 117 at 9 n.2.)

15          The record reflects that under the Spa Balancing Policy, all massage therapists'

16   appointments are balanced twice a day, before the start of each shift.  (PSOF ¶ 65. PSOF.

17   Ex. 22 at H, corrected Ex. 7 at 87-88.)  Before each shift, the Spa supervisors review the

18   appointments that were booked the day before and allocate them among the therapists

19   who can perform the requested treatments to ensure that each therapist receives about the

20   same number of appointments.  (PSOF ¶ 67, corrected Ex. 7 at 82, 152; DSOF, Ex. E at

21   21-22, Ex. G at 233.)  After the Spa supervisors balance the appointments before a shift,

22   any newly booked appointments are assigned by the Spa Soft program to the therapist in

23   the rotation with the lowest "percentage load" who can perform the booked treatment.

24   _____

25          [11]   To support her motion for summary judgment on this claim, Plaintiff asserts
     that Defendants denied her request for accommodation in which she asked to have her
26   appointments rebalanced in the same manner as the male therapists' appointments.
     (Doc. 94 at 16 (citing 42 U.S.C.  § 12112(b)(2(B).)  Because "a claim of discrimination
27   based on a failure reasonably to accommodate is distinct from a claim of discrimination
     based on disparate impact," *Henrietta D. v. Bloomberg*, 331 F.3d 261, 276-77 (2d Cir.
28   2003), this argument does not support Plaintiff's disparate treatment claim and will be
     addressed separately in Section IV.

- 19 -

(DSOF ¶ 98, Ex. B at 52, 149-50; Ex. G at 234.)   If a therapist cannot perform a treatment, Spa Soft assigns the appointment to the next therapist in the rotation who can perform the treatment.  (DSOF ¶ 105, Ex. F at 366-67; PSOF ¶ 60, 62.)   In addition to balancing the appointments before each shift, the Spa Balancing Policy also provides that "if a guest moves an appointment to a later time at the last moment, the supervisor will make every effort to swap an appointment if possible."[12]  (PSOF ¶ 77, Ex. 22.)

The record also reflects that that when a guest expresses a preference for a female therapist after an appointment has been booked with a male therapist, the supervisor tries to swap an appointment between a male therapist and a female therapist.  (PSOF 2 ¶¶ 96, 102-03; PSOF, Ex. 12 at 37-39.)   When a guest who was booked with a male therapist requests a female therapist, the appointment is given to a female therapist.  (PSOF ¶ 71, Ex. 12 at 37-38, Ex. 22 at H, Ex. 14 at 40.)  If the female therapist has an appointment at the same time, she swaps her appointment with the male therapist (a same-time swap).  (PSOF, Ex. 12 at 38-39.)   When the schedule does not permit a same-time swap, the supervisor attempts to book an appointment for the male therapist at a later time.  (PSOF ¶ 79, Ex. 7 at 104, Ex. 14 at 39-42.)  If "unable to trade a later appointment for the male therapist, [the supervisor] takes an appointment from a female therapist, who did not receive the male's gender preference appointment, and give[s] it to the male to compensate him for the loss."  (PSOF ¶ 81, Ex. 14 at 42.)  Defendants explain that they follow this practice because male therapists typically have fewer appointments booked.  (PSOF, Ex. 7 at 102.)

Although Plaintiff's allegations are unclear, she appears to allege that Defendants only applied the Spa Balancing Policy in the manner described above for male therapists and did not similarly swap appointments when Plaintiff lost an appointment because a guest changed an appointment time.  (Doc. 94 at 16 (arguing that Defendants make "no similar adjustments" for Plaintiff); PSOF ¶ 195-98.)   Plaintiff appears to argue that

---

[12]   Swapping means moving an appointment from one therapist to another therapist.  (PSOF, corrected Ex. 7 at 109.)

because she, similar to the male therapists, has fewer appointments booked at the start of each day because of her disability (PSOF, Ex. 1 ¶ 23), Defendants' practice of only swapping appointments for male therapists discriminated against her on the basis of her disability.

In response, Defendants state that, in three specific situations, the Spa tries to swap appointments among the massage therapists within a shift, based on last minute guest requests.   (Doc. 109 at 14.)   These situations occur when a guest (1) changes the appointment time to a time the therapist cannot accept, (2) changes the service/treatment to a service/treatment the therapist cannot perform, and (3) changes their request for a therapist based on gender.   (DSOF ¶ 107-09.)   Defendants argue that, when these situations occur, they treat all therapists equally.  (Doc. 109 at 14.)

Plaintiff disputes this assertion.  In her declaration, Plaintiff states that since the Enhanced System and the Spa Balancing Policy were adopted, "at no time" has she had "a guest assigned to [her] for a treatment that [she] could perform request[] a treatment that she was unable to perform because of her epilepsy at check-in."  (PSOF, Ex. 1 ¶ 23.) However, she states that Defendants have told her that they would "not swap or balance appointments for [her] — even with knowledge of [her] disability."  (*Id.*)  She argues that Marriott does not manually swap appointments for her after "pre-shift balancing" if she "loses a booking because a guest changes the appointment time," as it does for male therapists.   (Doc. 94 at 16; PSOF ¶ 196, Ex. 1 ¶ 23 (stating that Defendants said they would not swap appointments for Plaintiff), Ex. 7 at 147-48.)   Plaintiff argues that Defendants' implementation of its Spa Balancing Policy (specifically their alleged refusal to swap appointments for her) does not consider that she, like male therapists, often starts the day with fewer appointments booked because of her disability and, therefore, the policy discriminates against her on the basis of her disability.  (Doc. 94 at 17-18, PSOF ¶ 41.)  Because there is a genuine dispute regarding how Defendants implement the Spa Balancing Policy, the Court denies the parties' motions for summary judgment on Plaintiff's disparate treatment claim based on that policy.

1        Additionally, the parties' briefing on this claim often mixes discussions of

2    disparate treatment and failure to accommodate.  (*See* Doc. 94 at 16, 18 (discussing

3    reasonable accommodation), Doc. 94 at 17 (referring to "disparate treatment"), Doc. 109

4    at 13 (discussing discriminatory treatment), Doc. 117 at 8-10 (discussing Defendants'

5    obligation to accommodate Plaintiff by rebalancing her appointments).)   However, as

6    further explained in Section III.C.3, disparate treatment and failure to accommodate are

7    distinct theories of liability under the ADA and are analyzed differently.  *Johnson v. The*

8    *Evangelical Lutheran Good Samaritan Society*, 2005 WL 230834, at *7-*8 (D. Or. Aug.

9    23, 2005) (discussing theories of liability under the ADA).

10        Considering the lack of clarity in the parties' arguments regarding Plaintiff's claim

11   based on the Spa Balancing Policy, the Court denies summary judgment on this basis as

12   well.  *See Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986) ("It is not the obligation

13   of this court to research and construct the legal arguments open to parties, especially

14   when they are represented by counsel."); *Marco Realini v. Contship Containerlines, Ltd.*,

15   143 F. Supp. 2d 1337, 1343 (S.D. Fla. 1999) (denying summary judgment when parties

16   had failed to adequately brief the issues).

17        **3.      Points Assigned in the Enhanced System**

18        Plaintiff next moves for summary judgment on her claim that Defendants

19   discriminated against her on the basis of her disability by failing to assign her three points

20   for the Revive Massage in the Enhanced System.  (Doc. 109 at 18.)  Plaintiff argues that

21   she suffered an adverse employment action when Defendants refused to assign her three

22   additional points because her ranking in the Enhanced System was adversely affected.

23   (Doc. 94 at 12, 19.)  She also argues that Defendants cannot show that assigning her three

24   additional points would result in an "undue hardship," and she cites cases addressing

25   failure to accommodate claims.  (Doc. 94 at 20, 22 (citing *Cripes v. City of San Jose*, 261

26   F.3d 877, 893 (9th Cir. 2001).)  In her reply to support her motion for summary judgment

27   on this claim, Plaintiff argues she does not need to establish an adverse employment to

28   establish a failure to accommodate claim.  (Doc. 117 at 12.)  Additionally, Plaintiff's

1    reply discusses the issue of the three points using the language of a failure to

2    accommodate claim.  (Doc. 117 at 11.)  For example, Plaintiff argues that Defendants

3    have failed to show that assigning Plaintiff the three points for performing the Revive

4    Massage is an undue hardship.  (Doc.  117 at 11); *see Zivkovic v. S. Cal. Edison Co.*, 302

5    F.3d 1080, 1989 (9th Cir. 2002) (stating that "[u]nder the ADA, an employer is required

6    to provide reasonable accommodations to disabled employees unless the employer can

7    demonstrate that the accommodation would impose an undue hardship on the operation

8    of the business of the employer.").

9        However, disparate treatment and failure to accommodate are distinct theories of

10   liability under the ADA and are analyzed differently.  *See Johnson*, 2005 WL 230834, at

11   *7-*8.  In a disparate treatment case, the employer allegedly treated the plaintiff "less

12   favorably than others because of [her] race, color, religion, sex, or [other protected

13   characteristic]."  *Teamsters v. United States*, 431 U.S. 324, 335, n.15 (1977).  An

14   employer's liability in a disparate-treatment case "'depends on whether the protected

15   trait . . . actually motivated the employer's decision.'"  *Raytheon*, 540 U.S. at 52 (quoting

16   *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).  The *McDonnell Douglas*

17   burden-shifting analysis generally applies to disparate treatment claims.  *Raytheon*, 540

18   U.S. at 50 n.3 (stating that the *McDonell Douglas* analysis applies to disparate treatment

19   claims under the ADA).

20       In a failure to accommodate claim, the issue is "whether sufficient evidence in the

21   record supports the inference that [the employer] failed to accommodate [the employee's]

22   disability."  *Johnson*, 2005WL 2030834, at *8.  The *McDonnell Douglas* analysis is

23   inappropriate in failure to accommodate claims.  *Id.*  (quoting *Weigel v. Target Stores*,

24   122 F.3d 461, 464 (7th Cir. 1997)).  "'Accordingly, it is important for the plaintiff to be

25   clear about the nature of the claim [she] is asserting.'"  *Johnson*, 2005 WL 2030834, at

26   *8 (quoting *Weigel*, 122 F.3d at 464.)

27       Considering Plaintiff's interweaving of the law applicable to disparate treatment

28   and failure to accommodate claims in her motion for summary judgment on her claim

1   related to her request for three additional points in the Enhanced System (Doc. 94 at 18-

2   23), and her almost complete reliance on a failure to accommodate theory to support that

3   claim in her Reply (Doc. 117 at 11-14), Plaintiff has not clearly identified the nature of

4   her claim in her motion for summary judgment.  Based on the lack of clarity in Plaintiff's

5   motion for summary judgment and her Reply, the Court denies Plaintiff's motion for

6   summary judgment on her claim that Defendants discriminated against her by failing to

7   assign her three points for the Revive Massage.  *See Sanchez*, 792 F.2d at 703; *Marco*

8   *Realini,* 143 F. Supp. 2d at 1343.  Additionally, to the extent that Defendants move for

9   summary judgment on Plaintiff's disparate treatment claim based on her request for three

10  additional points in the Enhanced System, the Court denies Defendants' motion for a

11  similar lack of clarity.  However, as set forth below, the Court considers Defendants'

12  request for summary judgment on Plaintiff's failure to accommodate claim, which the

13  parties have fully briefed.

14  **IV.    Plaintiff's ADA Failure to Accommodate Claims**

15          Plaintiff asserts that Defendants discriminated against her in violation of the ADA

16  by refusing to grant her reasonable accommodations.  (Doc. 1.)  Defendants move for

17  summary judgment on Plaintiff's claims that they failed to reasonably accommodate her

18  by refusing to assign her three points in the Enhanced System for the Revive Massage,

19  and by denying her request to have her appointments rebalanced throughout the day.

20  (Doc. 92.)

21          The ADA prohibits employers from discriminating against employees by "not

22  making reasonable accommodations to the known [limitations of an employee]."  42

23  U.S.C. § 12112(b)(5)(A); *see also* 29 C.F.R  § 1630.9.  "[A plaintiff] bears the initial

24  burden of showing that 'the suggested accommodation would, more probably than not,

25  have resulted in [her] ability to perform the essential functions of [her] job.'"  *Mustafa v.*

26  *Clark County Sch. Dist.*, 157 F.3d 1169, 1176 (9th Cir. 1998) (citing *Buckingham v.*

27

28

1   *United States*, 998 F.2d 735, 742 (9th Cir. 1993)).[13]  Once plaintiff satisfies her burden by

2   demonstrating a viable accommodation the burden shifts to the employer to demonstrate

3   that "the accommodation would impose an undue hardship on the operation of the

4   business of the employer." *Zivkovic*, 302 F.3d at 1089.

5        Assessing the potential accommodation of a disabled employee may require the

6   employer to initiate "an informal, interactive process with the qualified individual."  29

7   C.F.R. § 1630.2(o)(3).  The interactive process is "a mandatory rather than a permissive

8   obligation on the part of employers under the ADA . . . and is triggered by an employee

9   or an employee's representative giving notice of the employee's disability and the desire

10  for accommodation."  *Barnett v. U.S. Air., Inc*., 228 F.3d 1105, 1114 (9th Cir. 2000);

11  *Brown v. Lucky Stores, Inc*., 246 F.3d 1182, 1188 (9th Cir. 2001).   Appropriate

12  reasonable accommodations may include "job restructuring, part-time or modified work

13  schedule, reassignment to a vacant position, acquisition or modification of equipment or

14  devices," as well as "modifications or adjustments that enable [the disabled employee] to

15  enjoy equal benefits and privileges of employment as are enjoyed by its other similarly

16  situated  employees  without  disabilities."    29  C.F.R.  §  1630.2(o);  *see  also*  42

17  U.S.C. § 12111(9)(B).

18  **A.   Defendants' Obligation to Offer Accommodations**

19       In their motion for summary judgment, Defendants argue that because Plaintiff

20  does not dispute that she is able to perform the essential functions of her job (performing

21  massages) without accommodation, they were not obligated to provide any reasonable

22  accommodations for her disability.[14]  (Doc. 92 at 13, 14); *see Cripes,* 261 F.3d at 889

23  (reasonable  accommodations  include  "mechanisms  to  remove  barriers  or  provide

24  assistance to disabled individuals so that they can perform the 'essential functions' of the

25  ───────────

26  [13]   Although both cited cases are based on claims under the Rehabilitation Act of
    1973, 29 U.S.C. § 794, "[i]nterpretations of the ADA are guided by Rehabilitation Act
    precedent."  *Nunes*, 164 F.3d at 1248 n.2.

27  [14]    Plaintiff  does  not  dispute  that  she  can  perform  massages  without
28  accommodation.  (PCSOF at 10 (Plaintiff does not dispute the portion of DSOF ¶ 30
    which states that Plaintiff "has and continues to be able to perform the essential functions
    of her job without the need for accommodation.")  (citing DSOF, Ex. H at 119-120).)

1    employment position.").  In other words, Defendants argue that an employer is required

2    to provide reasonable accommodations only if accommodations are required to enable an

3    employee to perform the essential functions of her job.

4        Plaintiff asserts that the ADA requires accommodations to provide disabled

5    employees equal access to opportunities.  (Doc. 103 at 10.)  Plaintiff asserts that because

6    her disability precludes her from performing massages or treatments with scented oils,

7    she is deprived of the opportunity to earn the maximum number of points under the

8    Enhanced System and, in turn, of an equal opportunity to be assigned appointments.

9    (Doc. 103 at 14.)  Thus, she asserts that Defendants' implementation of the Enhanced

10   System is a barrier to the performance of her essential job functions.

11       The Supreme Court has held that the ADA requires reasonable accommodations

12   for individuals "with disabilities to obtain the same *workplace opportunities* that those

13   without disabilities enjoy."[15]  *Barnett*, 535 U.S. at 397 (emphasis added).  In so holding,

14   the Court in *Barnett* found that a reasonable accommodation may result in a preference

15   for disabled individuals over otherwise similarly situated nondisabled individuals.  *Id.* at

16   405.  "*Barnett* [also] indicates that accommodations may adjust for the practical impact

17   of a disability, not only for the immediate manifestations of the physical or mental

18   impairment giving rise to the disability."  *Giebeler v. M & B Assoc.*, 343 F.3d 1143, 1150

19   (9th Cir. 2003) (discussing *Barnett*).  "*Barnett* recognized that the obligation to

20

21       [15]  The regulations provide for three categories of reasonable accommodations:
     "(1) accommodations that are required to ensure equal opportunity in the application
22   process; (2) accommodations that enable employees with disabilities to perform the
     essential functions of the position held or desired; and (3) accommodations that enable
23   employees with disabilities to enjoy benefits and privileges equivalent to those enjoyed
     by non-disabled employees."  *EEOC v. MCI Tele. Corp.*, 993 F. Supp. 726,
24   (D. Ariz. 1998) (citing 29 C.F.R. § 1630(o)).

25       The Court's decision in *Barnett* turned on the second type of reasonable
     accommodation provided in 29 C.F.R. § 1630.2(o)(1)(ii), and did not consider whether
26   workplace opportunities (such as opportunities to be assigned to a particular position)
     constituted a "benefit" or "privilege" under 29 C.F.R. § 1630.2(o)(1)(iii).  *Barnett*, 535
27   U.S. at 396-406.  Therefore, the Court does not need to consider Defendants' argument
     that "benefits and privileged of employment" under the regulations are limited to access
28   to workplace facilities and services.  (Doc. 116 at 4.)

1    'accommodate' a disability can include the obligation to alter policies that can be barriers

2    to nondisabled persons as well." *Id.* at 1151 (citing *Barnett*, 535 U.S. at 405).  Therefore,

3    the Court rejects Defendants' argument that reasonable accommodations were not

4    required because Plaintiff could perform the essential functions of her job without an

5    accommodation.

6    **B.    Good Faith Participation in the Interactive Process**

7        To support their summary judgment motion, Defendants alternatively argue that,

8    even if they had a duty to accommodate Plaintiff, they engaged in the interactive process

9    with Plaintiff and granted her reasonable accommodations and, thus, have satisfied their

10   duty under the ADA.[16]  (Doc. 92 at 10.)  Plaintiff disputes whether Defendants engaged

11   in the interactive process.  (Doc. 103 at 11.)

12       The ADA requires employers to engage in a good-faith interactive process with

13   employees to identify and implement appropriate reasonable accommodations.

14   29 C.F.R. § 1630.2(o)(3).  The interactive process also requires employers to analyze job

15   functions, establish essential and nonessential job functions, and cooperate with the

16   employee to determine the types of accommodation that would be most effective.  *See*

17   *Barnett v. U.S. Air, Inc*., 228 F.3d 1105, 1115 (9th Cir. 2000) (en banc), *vacated on other*

18   *grounds by* 535 U.S. 391 (2002) (stating that neither side can delay or obstruct the

19   interactive process).  After the employer and employee "have identified and assessed the

20   range of possible reasonable accommodations, . . .'the expressed choice of the applicant

21   shall be given primary consideration unless another effective accommodation exists that

22   would provide a meaningful equal employment opportunity.'"  *Barnett*, 228 F.3d at 1115

23   (quoting ADA legislative history).  The duty to accommodate "is a 'continuing' duty that

---

25   [16]   Defendants argue that they were not obligated to engage in the interactive
26   process because there is no evidence of a nexus between Plaintiff's seizures and the use
     of scented oils.  (Doc. 92 at 11.)  Plaintiff has presented evidence that she had seizures
     after using scented oils during work-related training and that scented oils could cause
27   seizures.  (PSOF, Ex. 1, Ex. 4 at 43.)  Plaintiff has presented sufficient evidence to create
     a genuine dispute regarding whether there is a medical nexus between her disability and
28   the need for an accommodation.  Accordingly, the Court will not grant summary
     judgment based on Defendants' nexus argument.

is 'not exhausted by one effort.'" *McAlindin v. County of San Diego*, 192 F.3d 1226, 1237 (9th Cir. 1999). "The employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed." *Humphreys v. Mem. Hosp. Ass'n.*, 239 F.3d 1128, 1138 (9th Cir. 2001). However, an "employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Zivkovic.*, 302 F.3d at 1089. Whether an accommodation is reasonable turns on the facts of the case. *McAlindin*, 192 F.3d at 1238.

The record reflects that in 2006, Defendants granted Plaintiff's request to be excused from performing scented body treatments. (PSOF, corrected Ex. 2 at 14, 117; DSOF, Ex. H at 114-118, 166.) After the Spa implemented the Enhanced System in 2010, Defendants and Plaintiff reevaluated Plaintiff's accommodation. (DSOF ¶¶ 59-71, 86-89.) Defendants assigned Plaintiff the full eighteen points in the Enhanced System for eight body treatments that she could not perform because they used scented oils. (DSOF ¶ 71, Ex. H at 173, 187-88, 264; Ex. B at 36-37, 89.) Defendants also again excused Plaintiff from performing treatments using scented oils. (DSOF, Ex. H at 173.)

After Defendants disciplined Plaintiff in July 2011 for performing the Revive Massage with unscented oil in violation of Spa protocol, Plaintiff advised Barrett and Smith that she had previously been excused from performing treatments that used scented oils because of her disability. (PSOF ¶ 179, Ex. 1 at ¶ 45.) Defendants excused Plaintiff from performing the Revive Massage. (PSOF, Ex. 29.) Plaintiff requested additional accommodations from Barrett and Smith, including that the Spa assign her three points in the Enhanced System for the Revive Massage and rebalance her appointments throughout the day. (DSOF ¶77, Ex. H at 229-30, 234, 235, 238, Ex. F at 337-38, 344-46, 376-77.) Defendants denied Plaintiff's requests. (PSOF, Ex. F at 345.)

Plaintiff disputes whether Marriott engaged in the interactive process after July 2011 because Defendants allegedly rejected Plaintiff's requests without considering

whether the requested accommodations were reasonable.  (Doc. 103 at 12; PSOF ¶ 144.)
Plaintiff argues that although Defendants acknowledged that she had an ADA
accommodation to not use scented oils (PSOF, Ex. 23), Defendants did not consider
Plaintiff's request for accommodation to "be ADA" and thus summarily dismissed her
request for accommodations after July 2011.  (Doc. 103 at 12.)  Plaintiff further argues
that, rather than complying with their obligations under the ADA, Barrett and Smith did
not assign Plaintiff the three points for the Revive Massage because it had "already
giv[en] her 18 points for the body treatments" and "it was [not] fair [to the other
therapists] to give her more."  (PSOF, corrected Ex. 7 at 59-60.)  Plaintiff also argues that
Barrett told her she had "exhausted the ADA" and was "a burden on the Spa."  (Doc. 103
at 11; PSOF, corrected Ex. 2 at 340-43).   Thus, Plaintiff argues that Defendants
terminated the interactive process in July 2011 and she was not obligated to continue
asking Defendants for accommodations when it was clear they were not going to consider
her requests.  (Doc. 103 at 11.)

Defendants counter that they sufficiently accommodated Plaintiff by excusing her
from performing treatments that used scented oils and offering several other
accommodations.  (Doc. 92 at 9, 13.)  Defendants argue that Plaintiff terminated the
interactive process by failing to raise the accommodation issue after July 2011.  (Doc. 92
at 11.)  In her Reply, Plaintiff asserts that the accommodations Defendants offered were
ineffective because they did not necessarily provide employment opportunities equal to
Plaintiff's peers because none of the offered accommodations affected Plaintiff's ranking
for purposes of assigning massage appointments in the Enhanced System or affected her
assignment of appointments during a particular shift.  (Doc. 103 at 14, 20.)

In a failure to accommodate case, summary judgment is only available for an
employer when there is no genuine dispute that the employer has engaged in the
interactive process in good faith.  *Barnett*, 228 F.3d at 1116.  Considering Plaintiff's
testimony that Barrett told her  she had "exhausted the ADA," that she was a "burden on
the Spa," and that "this was not ADA," (Doc. 103 at 11, PSOF Ex. 20, PSOF corrected

Ex. 2 at 340-43), there is a genuine dispute whether Defendants engaged in good faith in the interactive process.  Evidence that an employer failed to engage in the interactive process in good faith alleviates the plaintiff of the burden of providing evidence of the reasonableness of her proposed accommodations at the summary judgment stage.  *See Witt v. N.W. Aluminum, Co*., 177 F. Supp. 2d 1127, 1133 (D. Or. 2001) (denying summary judgment on ADA claim when there was evidence that the employer did not engage in the interactive process).  Thus, the Court does not need to consider the reasonableness of Plaintiff's proposed accommodations at this point in the proceedings.

### C.    Plaintiff's Request for Accommodation

Nevertheless, viewing the record in the light most favorable to Plaintiff, the identified accommodations (the assignment of three additional points and rebalancing throughout the shift) are not inherently unreasonable.  *Barnett*, 535U.S. at 42 ("[T]o defeat a motion for summary judgment, [the plaintiff] need only show that an 'accommodation' seems reasonable on its face, i.e., ordinarily in in the run of cases.").  The record reflects that Defendants assign points in the Enhanced System to other therapists who are unable or unwilling to perform certain treatments or services.  (PSOF 2, Ex. 2 at 40, Ex. 27 at 7; PSOF, corrected Ex. 7 at 40, 211 (therapist Shawn Kelly is given three points each for two massages he does not perform for religious reasons); PSOF, Ex. 11 at 20, 47 (non-disabled therapist Lisa Hagan received three points for body treatments she was unable to perform).  The record also reflects that Defendants rebalance appointments for male employees.  (PSOF ¶ 76, corrected Ex. 7 at 102-04, Ex. 22 (rebalancing or swapping appointments for male employees).)  These exceptions to Defendants' policies regarding assigning points for modalities and balancing or swapping appointments cast doubt on Defendants' argument that Plaintiff's requested accommodations are unreasonable.

Defendants further argue that providing Plaintiff her requested accommodations would amount to preferential treatment.  (Doc. 92 at 17.)  This argument does not undercut Plaintiff's failure to accommodate claim because even if Plaintiff's requested

accommodations required Defendants to offer Plaintiff preferential treatment, "[b]y definition any special 'accommodation' requires the employer to treat an employee with a disability differently, i.e., preferentially." *Barnett*, 535 U.S. at 397.

Defendants also argue that Plaintiff's request to be accommodated by assigning her three points in the Enhanced System for the Revive Massage is unreasonable as a matter of law because it would override Defendants' established seniority system. (Doc. 92 at 16.)  "A 'seniority system' is a scheme that alone or in tandem with other non-'seniority' criteria allots to employees ever improving employee rights and benefits as their relative lengths of pertinent employment increase."  *Cal. Brewers Ass'n v. Bryant*, 444 U.S. 598, 605-06 (1980).  The Supreme Court has held that a requested accommodation that conflicts with the rules of a seniority system is ordinarily unreasonable. *Barnett*, 535 U.S. at 394.

The parties dispute whether the Enhanced System is a seniority system.  There is evidence that Defendants adopted the Enhanced System to replace their prior seniority system, suggesting that the current system is not a seniority system.  (PSOF 2 ¶ 78, Ex. 26; DSOF, Ex. A at ¶ 43) (stating that the "new system would eliminate the old seniority system and implement a 'point system' that would establish ranking system" based on several criteria).  Additionally, the Enhanced System assigns a total of twenty-five points if an employee has been employed for over eight years, but apparently stops considering years of service once an employee has served over eight years.  (Doc. 92 at 19; DSOF ¶ 89, Ex. A at ¶ 33.).  Thus, the Enhanced System does not appear to award "ever improving employee rights and benefits as their relative lengths of pertinent employment increase." *See Cal. Brewer's Ass'n*, 444 U.S. at 605-06.

On the existing record, there is a genuine dispute as to whether the Enhanced System is a seniority system.  Additionally, even if the Enhanced System is a seniority system, there is evidence that, despite that seniority system, Plaintiff's requested accommodations are reasonable.  *See Barnett*, 535 U.S. at 405 (although the ADA may not trump a seniority system in the run of cases, an employee may show that the

requested accommodation is reasonable on the particular facts of the case).  Plaintiff has offered evidence that Defendants make exceptions to their policies for assigning points under the Enhanced System (PSOF, corrected Ex. 7 at 40, 211, Ex. 11 at 20, 47), thus there is a genuine dispute that employee expectations that the system will be followed have been reduced such that "one more departure, needed to accommodate [Plaintiff], will not likely make a difference."  *Barnett*, 535 U.S. at 405.

Construing the evidence in the light most favorable to Plaintiff, there is a genuine dispute whether Defendants engaged in the interactive process in good faith and whether the accommodations Plaintiff requested are reasonable.  Accordingly, the Court denies Defendants' motion for summary judgment on Plaintiff's ADA failure to accommodate claims.

**V.      State Law Claim for the Intentional Infliction of Emotional Distress**

Defendants also move for summary judgment on Plaintiff's state law claim of intentional infliction of emotional distress. (Doc. 92 at 21.)   To establish a claim for intentional infliction of emotional distress, Plaintiff must prove that Defendants (1) engaged in "extreme" and "outrageous" conduct, (2) intended to cause emotional distress or "recklessly disregarded the near certainty that such distress will result," and (3) actually caused her to suffer "severe emotional distress."  *See Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005) (quoting *Ford v. Revlon*, *Inc.*, 734 P.2d 580, 585 (Ariz. 1987)).

To be extreme and outrageous, the acts complained of must be "'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'"  *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (quoting *Cluff v. Farmers Ins. Exch.*, 460 P.2d 666, 668 (Ariz. Ct. App. 1969)).   Conduct in the employment context rarely rises to the required level of outrageousness.  *Mintz*, 905 P.2d at 563 (citing *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)).   Furthermore, though a showing of physical injury or a disabling response is not required,

1   the resulting emotional "distress must be extreme" and severe to support this cause of

2   action.  *Pankratz v. Willis*, 744 P.2d 1182, 1191 (Ariz. Ct. App. 1987) (the conduct must

3   "be of such a nature at to be apt to cause" a "disabling result").

4          Here, the Court concludes as a matter of law that the facts do not support a claim

5   for intentional infliction of emotional distress.  To support this claim, Plaintiff argues that

6   Defendants disciplined her for her disability, refused her requests for accommodations,

7   and treated her less fairly than other non-disabled therapists.  (Doc. 103 at 23.)  In sum,

8   Plaintiff relies on her allegations of discrimination, without any additional allegations of

9   outrageous or extreme conduct.  The Court has already found that Plaintiff's claim that

10  she was disciplined for her disability fails as a matter of law, and has found that there are

11  disputed issues of fact that preclude summary judgment on her other claims.  Therefore,

12  none of Defendants' conduct, including that of its employees or former employees, which

13  occurred entirely within the employment context, is sufficiently extreme and outrageous.

14  *See Mintz*, 905 P.2d at 563-64 (holding that the employer's conduct was not extreme and

15  outrageous when the employer failed to promote the plaintiff, forced her to return to

16  work, and hand-delivered her a letter while she was in the hospital informing her that her

17  job duties had been reassigned); *Spratt v. Northern Auto. Corp.*, 958 F. Supp. 456, 461

18  (D. Ariz. 1996) (holding that the employer's conduct was not extreme and outrageous

19  when the employer placed the employee on corrective action, demoted her, reduced her

20  salary, and fired her for theft and fraud while she was on maternity leave).

21         In addition, Plaintiff has not shown that she suffered severe emotional distress.

22  Plaintiff has not sought medical treatment for her alleged emotional distress or sustained

23  any damages for her alleged emotional distress.  (DSOF, Ex. 118, Ex. H at 297-98

24  (stating that her damages are based on the number of massages she missed).)  Although

25  Plaintiff's lack of medical treatment does not preclude a claim for the intentional

26  infliction of emotional distress, Plaintiff does not cite any evidence indicative of severe

27  emotional distress in opposition to Defendants' motion for summary judgment.

28

1   (Doc. 103 at 23.)  Therefore, the Court grants summary judgment in favor of Defendants

2   on this claim.

3   **VI.    Punitive Damages**

4          Defendants also move for summary judgment on Plaintiff's claim for punitive

5   damages.  (Doc. 92 at 23.)  The ADA allows for punitive damages in cases in which the

6   defendant has engaged in discriminatory acts "with malice or with reckless indifference"

7   to the rights of the plaintiff.  42 U.S.C. § 1981a(b)(1).  In *Kolstad v. Amer. Dental Ass'n.*,

8   527 U.S. 526 (1999), the Supreme Court explained that in § 1981a "Congress plainly

9   sought to impose two standards of liability — one for establishing a right to

10  compensatory damages and another, higher standard that a plaintiff must satisfy to

11  qualify for an award of punitive damages."  527 U.S. at 534.  Thus, to justify an award of

12  punitive damages, an "employer must act with 'malice or reckless indifference to the

13  [plaintiff's] federally protected rights.'"  *Id.* at 535 (quoting 42 U.S.C. § 1981a(b)(1))

14  (alteration and emphasis in original).  The Court further explained that the terms "malice"

15  and "reckless indifference" pertain to "the employer's knowledge that it may be acting in

16  violation of federal law, not its awareness that it is engaging in discrimination."  *Id.* at

17  535.  Therefore, under this standard, "an employer must at least discriminate in the face

18  of a perceived risk that its actions will violate federal law to be liable in punitive

19  damages."  *Id.* at 536.

20         Here, Plaintiff asserts that Defendants acted with reckless disregard of her rights

21  by denying her request for accommodations, disciplining her for disability, and by telling

22  her that she had "exhausted her ADA" and was a "burden to the Spa."  (Doc. 103 at 23.)

23  Because there are genuine disputes of fact related to Plaintiff's failure to accommodate

24  claims that could affect the resolution of Plaintiff's claim for punitive damages, the Court

25  denies summary judgment on this claim.

26         Accordingly,

27         **IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment

28  (Doc. 94) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 92) is **DENIED,** in part, on Plaintiff's failure to accommodate claims and her request for punitive damages, and is **GRANTED,** in part, on Plaintiff's claim that Defendants discriminated against her in violation the ADA by disciplining her in 2011, and on Plaintiff's state law claim for the intentional infliction of emotional distress.

Dated this 31st day of October, 2014.

Bridget S. Bade
United States Magistrate Judge

- 35 -